ACME–KEYSTONE MFG. CO. v. DEARBORN et al.

(Circuit Court S. D. New York. June 8, 1910.)

1. PATENTS (§ 328*)—INFRINGEMENT—SEWING MACHINE.
   The Dearborn patents, No. 639,669, No. 679,553, and No. 705,326, relating to blind stitch sewing machines, construed, and each *held* infringed.

2. WORDS AND PHRASES—"BLIND STITCHES."
   "Blind stitches" are stitches which enter the cloth without going entirely through it, and show on one side only.

In Equity. Suit by the Acme-Keystone Manufacturing Company against Charles A. Dearborn and Barnet Grossbard, copartners as the American Blind Stitch Machine Company. Decree for complainant.

See, also, 167 Fed. 568.

Hillary C. Messimer, for complainant.

Harry E. Knight (William E. Knight, Charles C. Gill, and David J. Newland, of counsel), for defendants.

HAZEL, District Judge. This action involves the alleged infringement by the defendants, Charles A. Dearborn and Barnet Grossbard, copartners of three United States letters patent, Nos. 639,669, dated December 19, 1899, 679,553, dated July 30, 1901, and 705,326, dated July 22, 1902, and issued to the defendant Charles A. Dearborn, who thereafter assigned such patents to the complainant. They relate to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sewing machines, and specifically for making stitches in cloth which enter the cloth without going entirely through it and show on one side only—blind stitches, so called. This type of sewing machine is largely used to sew hems in garments, generally at the bottom of trousers and skirts. In order to perform the sewing operation the cloth is folded to form a ridge or rib through the upper part of which ridge the needle enters but does not pass through to the under side thereof. The thread is caught up from the needle as it passes through the ridge by the aid of a so-called looper in its forward movement, and the stitch held while the needle passes through the ridge. The loop of thread which is formed on the off side of the needle is carried in the prongs of the looper by a swinging or rocking motion across the line of the seam to enable the needle to pass through it in its successive forward and backward movements. As the stitching progresses the cloth is automatically moved towards the stitching point, and the swinging movement of the looper enables it to take the loop from the needle at one side of the stitching and shift it to the other. The validity of the said patents and claims is not in controversy, the principal question for decision being whether the machines manufactured by defendants are infringements thereof.

In patent No. 639,669, the issue is very narrow, and evidently depends upon whether the defendants have adapted in their machine the looper of claim 1, and if in operation it performs the same function in co-relation with the needle to make the stitch. In reading the specification it will be noticed that the patentee by his adaptation designed a new path or cycle for his looper so that interference between the needle and looper would be prevented when the machine was in operation. Claims 1 and 2 in controversy are substantially alike. The former reads:

"1. In a sewing-machine, the combination with a feeding mechanism, of a needle arranged to reciprocate horizontally or approximately so, and transversely to the line of feed, mechanism for operating said needle, a looper-rod provided with a looper located above the work-support and presser-foot and co-operating with said needle and the acting portion of which looper is eccentric to the longitudinal axis of said looper-rod, and mechanism for operating said looper-rod to cause the same to have a forward longitudinal movement to carry the looper forward above the work at one side of the line of stitches to take a loop from the needle above the work, then an axial or rocking movement to carry the looper across the line of stitches to the other side thereof, and then a longitudinal receding or rearward movement above the work to enable the looper to present the loop to the needle, and then a second axial or rocking movement to carry the looper again across the line of stitches to its first position, from which it may again move forward to take another loop, substantially as set forth."

In the latter portion of the claim beginning with the words "and mechanism for operating said looper-rod," etc., is found the feature which defendants claim differentiates their machine from that of complainant; i. e., that their looper is without an axial or rocking movement to facilitate taking the loop from the needle. Defendants claim that they have made a patentable departure from the patent in suit by substituting a suspended rock arm which causes the looper without rocking or axial movement to proceed forward and backward. But

the proofs show that the function of the defendants' looper in its recip-rocating movement in combination with the needle, the operating mechanism, the feeding mechanism, the looper and looper shaft or rod is practically the same as the looper of claim 1. It has a forward movement above the sewing material and to one side thereof and forms a loop from the needle. The mechanism carries the looper laterally across the line of stitching to the opposite side thereof without the looper turning, and then it recedes to allow the needle to stitch the cloth and slidingly returns to the initial position preparatory to moving forward to perform another stitching operation. There is no longer room for doubt as to complainant's claim that the defendants' looper has substantially the rocking movement required by the claim, inasmuch as the expert witness for the defendants when recalled for further testimony corrected his earlier deposition and admitted that the rear part of the defendants' looper has this feature. That the entire looper has not a more marked rocking movement is unimportant in view of the fact that the same result is achieved by rocking the rear portion of the looper which causes the forward part to sway or slide so as to catch up the thread from the loop and carry it across the line of the stitching. It makes no difference that the looper of the defendants' machine is of different form and when in operation slides or moves in its entirety across the seam and does not actually turn or rock to per-form the function. The essential thing the patentee had in mind was to carry the looper to and fro across the line of stitching without interfering with the needle or with taking the thread therefrom. I think claims 1 and 2 are entitled to a construction broad enough to in-clude a looper substantially operating to cause "the rear portion of the same to have an axial or rocking movement to carry the looper across the line of stitches to the other side thereof," and so construed the ex-hibit machine of the defendants infringe them.

### Dearborn Patent, No. 705,326.

Claims 3, 12 to 17, inclusive, and 20, 22, and 23 are in controversy. It is enough to set forth claim 3, which is typical of all the claims in issue except claim 20, which does not include the presser foot. It reads:

"3. In a blind-stitch sewing-machine, the combination of suitable stitch-forming mechanism, and a stationary presser-foot, with a ridge-forming rib constructed and arranged to engage the work beneath the presser-foot, and an upper feed device constructed and arranged to engage the upper exposed face of the work adjacent to said ridge-forming rib, substantially as set forth."

The contention of the defendants is that the claims are strictly limited to a stationary presser foot, but I think that the depressible foot of the defendants' machine is nevertheless the equivalent in opera-tion of this feature in complainant's machine. From reading the spec-ification and claims it becomes evident that the patentee believed in the practicability of a rigid and firmly positioned presser foot for sewing machines of the type under consideration. Indeed it is fairly shown that a presser foot to successfully perform the required function must be rigid and stationary, while one readily flexible and yielding is un-

suited for the purpose intended. The device of the defendants is pivoted to the feed frame, and may be depressed in a downward direction, but it is normally maintained stationary by a stop device and performs the precise functions of the claims in suit. Its downward yielding action to pressure of the cloth is claimed to "aid in making a better blind stitch," but the testimony on this point is meager, and as it was given by the patentee, who now endeavors to limit the scope of the claims to avoid infringement, is unpersuasive. The other claims in issue are concerned with the feeding mechanism in combination with the presser foot already mentioned. Claim 20 does not include the presser foot, and therefore the element of the feeding mechanism alone requires attention. The evidence shows that in the complainant's machine a part only of the under feed mechanism is located on the inside line of stitches, and such part is made to yield without relation to the work table while the yielding of the outside portion is dependent thereon. In defendants' machine the entire feed mechanism yields independently of the table, and the parts are made to yield separately. Such indicated differences in construction, however, are thought unimportant as no new result is attained thereby. Whatever differences of construction there exist in the machine in evidence manufactured by the defendants relate to minor details, and the same result is obtained as in complainant's machine by substantially similar instrumentalities.

### Dearborn Patent No. 679,553.

Claim 2 which alone is involved reads as follows:

"2. In a sewing machine, the combination of suitable stitch-forming mechanism, with a stationary presser-foot, a yieldingly-mounted feed-frame, a ridge-forming rib adjustably mounted in said feed-frame and adapted to engage the work beneath the presser-foot, and a feed device yieldingly mounted upon said feed-frame, and independent of the ridge-forming rib, substantially as set forth."

In view of the foregoing decision on the earlier patents the contention is narrowed to the question of whether the ridge-forming rib in defendants' structure is capable of adjustment. The defendants urge that the scope of the claim must be narrowed to a stationary presser foot and a ridge-forming rib adjustably mounted on a yielding feed frame. The patent is an improvement of patent No. 705,326, and no sufficient reason is found in the record to deprive the claim in issue of a fair construction. The defendants in their machine have a presser foot which responds to the claim, and they have adapted a ridge-forming rib which concededly in the machine introduced in evidence by them, though not in complainant's exhibit, defendants' machine, is capable of adjustment, and accordingly infringement of claim 2 is established.

From the foregoing, it will be observed that all the claims in issue are thought to be infringed by the defendants' exhibit, defendants' machine; and the complainant is therefore entitled to the usual decree for injunction and accounting, with costs.